IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| STEVEN WAYNE HALL, JR., | ) |
| :--- | :--- |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) Case No. 1:07-cv-00731-CG-C |
| | ) |
| KIM THOMAS, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| Respondent. | ) |

# ORDER

In 1993, Petitioner Steven Wayne Hall, Jr., was convicted of murder and condemned to die. He has been fighting that conviction ever since. Last year, Hall won a round in that fight when this court conditionally granted his habeas petition and instructed Respondent Kim Thomas, the Commissioner of the Alabama Department of Corrections (hereinafter the "State"), to give Hall a new trial or else let him go. (Doc. 35.) The matter is before the court on the State's Rule 59 Motion to Alter or Amend Order on Petition for Writ of Habeas Corpus. (Doc. 36.) For the reasons that follow, the State's motion is due to be denied.

# DISCUSSION

When the court conditionally granted Hall's habeas petition, it did so on limited grounds. Of the forty claims Hall pursued, the court rejected all but one: Hall's claim that the prosecution violated his rights when it used a peremptory strike to dismiss a black member of the jury venire, Minie Lett. After a de novo

review of the record, the court found that "the State's use of a peremptory strike in this case to dismiss Lett from the jury venire constituted intentional discrimination and violated Hall's rights under the Equal Protection Clause and the clearly established law as determined by the Supreme Court in *Batson*." (Doc. 35 at 44.) On that basis alone, the court conditionally granted Hall's habeas petition.

The State thinks that was a mistake, and that the court never should have conducted a de novo review of Hall's *Batson* claim in the first place. Instead, the State insists that this court should have decided Hall's *Batson* claim under the deferential standard set out in 28 U.S.C. § 2254(d). But as the court explained in its order, no such deference was warranted because "the state court decision on direct appeal was an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Doc. 35 at 38.) And as the following discussion will show, none of the arguments the State raises in its Rule 59 motion change that conclusion.

**I.  The court's analysis under § 2254(d)(1) does not conflict with *Lee*.**

The State's first argument is that the court's analysis under § 2254(d)(1) conflicts with the Eleventh Circuit's recent decision in *Lee v. Commissioner*, 726 F.3d 1172 (11th Cir. 2013), cert denied 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014), so the court starts its analysis with a short review of that decision.

In *Lee*, a habeas petitioner argued that § 2254(d)(1) requires state courts deciding *Batson* appeals to "show [they] considered every relevant circumstance

(and every relevant argument) by explicitly mentioning each one" in a written opinion. *Id.* at 1211. According to that petitioner, failure to abide by that opinion-writing requirement would automatically amount to an unreasonable application of clearly established federal law within the meaning of § 2254(d)(1).

The circuit court disagreed, finding that § 2254(d)(1) does not require state courts to "show [their] work by explicitly mentioning all relevant circumstances argued by a defendant in a *Batson* appeal." *Id.* at 1211. Instead, the court read § 2254(d)(1) as establishing a "'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *See id.* at 1212 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Thus, according to *Lee*, habeas courts must consider both the explicit findings in a state court's opinion and any "implicit findings the state court could have made in its denial of a federal claim," *Lee*, 726 F.3d at 1172, before finding that the state court unreasonably applied Supreme Court precedent. *Lee* referred to this rule as the implicit-findings principle. *Lee*, at 1216.

The State says this court's order violated that principle. The State's argument is founded largely on short quotations from this court's opinion that the State says follow the precise "mode of reasoning that the Eleventh Circuit repudiated in *Lee*." (Doc. 36 at 7.) In other words, the State argues that this court faulted the state court for violating an opinion-writing requirement that does not exist.

3

But this court's opinion was not so one-dimensional as the State suggests. Though the court indeed criticized the state court's failure to include an important fact in its written opinion, that criticism followed a finding that "the Court of Criminal Appeals failed to follow clearly established law when it did not *consider* all relevant circumstances in its analysis of the trial court's ruling." (Doc. 35 at 25 (emphasis added and quotation marks omitted).) Thus, this court's opinion ultimately faulted the state court for failing to even *consider* a relevant circumstance in its analysis of Hall's *Batson* claim, not on a mere failure to mention that fact in writing. And that conclusion is consonant with *Lee*, which recognizes that "a state court assuredly must evaluate the totality of the evidence and consider all relevant circumstances" when it decides a *Batson* challenge. *Lee*, 726 F.3d at 1212.

Of course, repeating that conclusion does not fully answer the State's objection. The State's motion does not merely fault the court's reasoning; it also quibbles with the court's conclusion. For the sake of thoroughness (and at the risk of redundancy), the court will explain once again why the court concluded that the state court unreasonably applied *Batson*.

The problem lies with the prosecutor's reason for striking Lett, *viz.*, her opposition to the death penalty. (Trial Tr. Vol. 42 at 7232–33.) To prove that Lett was opposed to the death penalty, the prosecutor stated as follows:

> She, in questioning, direct questioning, had strong reservations about the death penalty. Said she'd never given it much thought. She said that she would have great reservation in doing that. She said that her choice would be life without parole, generally. And we struck her for

4

that reason. We made notes of all these questionnaires, my associates did, during the questioning, by the way, Your Honor. And our notes indicated that Mrs. Lett had a strong resistance to the death penalty. We struck her for that reason.

(Trial Tr. Vol. 42 at 7232–33.) In response to a question from the trial judge, the prosecutor also mentioned Lett's "uneasiness about the questions and also her easiness[1] about the death penalty and her strong reservations that she expressed about the death penalty." (Trial Tr. Vol. 42 at 7234.) Thus, although the prosecutor supported his explanation for striking Lett with several facts, he ultimately struck her for a single reason: ". . . Mrs. Lett had a strong resistance to the death penalty. We struck her for *that reason*." (Trial Tr. Vol. 42 at 7233 (emphasis added).)

There is strong evidence in the record showing that that reason is false. Lett never expressed any strong reservations about the death penalty; the closest she ever got was to admit that she had mixed feelings. But that admission was followed by "an unambiguous affirmation that she could listen to the evidence and base her descision on the evidence presented at trial." (Doc. 35 at 41.) Likewise, Lett didn't say that she would generally choose life without parole over a death sentence. To the contrary, the record shows that every statement Lett made was either ambiguous ("Well, I think the death penalty, to me, I couldn't really say, but, if it be a threat to the public.") or unambiguously supportive of the death penalty ("They took a life, willing to give up their own."). Thus, the actual evidence strongly contradicted the reason the prosecutor gave for striking Lett. The state court should have considered that in its *Batson* analysis.

---

[1] *Sic*, presumably for 'uneasiness.'

But it did not. At the end of its *Batson* analysis, the state court wrote that there was "*no evidence* that the reasons advanced by the prosecutor were a sham." *Hall v. State*, 820 So. 2d 113, 131 (Ala. Crim. App. 1999) (emphasis added). Given that language, this court cannot infer that the state court implicitly considered the contradictions between the prosecutor's explanation and the record evidence. After all, while reasonable jurists might disagree about the significance of those contradictions, no reasonable jurist could deny that they constitute evidence that the prosecutor's reasons were false. The state court's conclusion therefore affirmatively shows a failure to consider those contradictions.

The problem apparently stems from the state court's misunderstanding of the prosecutor's reason for striking Lett. Although the record unambiguously shows that the prosecutor said he struck Lett because of her strong resistance to the death penalty, the state court analyzed Hall's *Batson* claim under the mistaken belief that the prosecutor struck Lett for having "mixed feelings about the death penalty," *Hall*, 820 So. 2d at 130. Had the state court properly understood the prosecutor's reason for striking Lett, it would have surely recognized the contradiction between that reason and the evidence in the record. But because the state court misunderstood the prosecutor's reason, it also failed to consider that contradiction. That mistake cannot, however, excuse the state court's error, because clearly established Supreme Court precedent requires courts applying *Batson* to examine the reasons that prosecutors actually give for their strikes, not ones imagined on appeal "that might not have shown up as false." *See Miller-El v. Dretke (Miller-El*

6

*II)*, 545 U.S. 231, 252 (2005) (noting that a potentially valid explanation for a strike thought up by an appellate court can do "nothing to satisfy the prosecutors' burden of stating a racially neutral explanation for their own actions").

*Lee* instructs that federal habeas courts must not infer an unreasonable application of federal law from a state court's silence. But it also says that a "'conspicuous misapplication of Supreme Court precedent,'" *Lee*, 726 F.3d at 1212 (quoting *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 785–86 (11th Cir.2003)), is something that this court cannot ignore. *See also Lee*, 726 F.3d at 1213 n.24 (noting that AEDPA deference cannot apply to a state court's decision on a claim "where the state court's opinion itself makes clear that" it did not rule on that claim). In other words, *Lee* requires habeas courts to give state courts the benefit of doubt; it does not authorize habeas courts to create doubt where there is none. Because *Lee*'s implicit-findings principle does not require (or allow) this court to assume that the state court considered a circumstance when the state court's written opinion affirmatively shows otherwise, this court must conclude again that "the Court of Criminal Appeals failed to follow clearly established law when it did not consider all relevant circumstances in its analysis of the trial court's ruling." (Doc. 35 at 25 (quotation marks omitted).)

Before moving on, the court notes that the State's arguments about other implicit findings the state court might have made do not change the analysis here. As discussed above, the state court's main error was its failure to consider a relevant circumstance. *Lee*, 726 F.3d at 1212 ("[U]nder *Batson* a state court

7

assuredly must evaluate the totality of the evidence and consider '*all* relevant circumstances' . . . ." (emphasis added).) That's an unreasonable application of *Batson* even if the state court did consider other factors like Lett's demeanor and a mistake in the prosecutor's notes. On Hall's direct appeal, the state court was bound to consider *all* relevant circumstances when it applied *Batson*'s third step, and the possibility that the state court might have considered some relevant circumstances does not cure its failure to consider the contradiction between the prosecutor's reasons for striking Lett and the evidence in the record.

II. **The court's de novo review of Hall's *Batson* claim did not overlook any relevant aspects of the record.**

All of the State's remaining arguments share a common flaw: They are all premised upon § 2254's deferential standard. But in light of the court's conclusion in Part I of this opinion, that is a mistake. Once a federal court concludes that a state court unreasonably applied federal law, it becomes "unconstrained by § 2254's deference" and a de novo review of the record is appropriate. *See McGahee v. Alabama Dep't Of Corrections*, 560 F.3d 1252, 1266 (11th Cir. 2009) (noting that § 2254's deference places no constraints on federal courts that have "determined that a state court decision is an unreasonable application of federal law . . ."). As a result, the State cannot rely on § 2254's deferential standard to show a mistake in this court's order.

But that does not necessarily dispose of the state's remaining arguments, which all point to "important aspects of the record" that this court's order

supposedly overlooked. Even without the advantage of § 2254's deferential standard, the state's arguments all point to facts that purportedly undermine Hall's *Batson* claim. If any of those facts were to change the outcome of the court's de novo review, then perhaps the State's motion would be due to be granted. Accordingly, the court will discuss each of the State's remaining arguments to explain why they do not change the court's ultimate conclusion.

### A. *Lett's Demeanor*

First, the State argues that this court's opinion failed to take into account the trial court's findings about Lett's demeanor at voir dire. The problem with that argument is that nothing in the record suggests the trial court ever made such a finding. Lett's demeanor was hardly mentioned at the trial level: the prosecutor mentioned it twice, but only when prompted by the trial judge. And although the trial judge did inquire about Lett's demeanor, he never made an on-the-record determination about it, opting instead to deny Hall's *Batson* challenge without explanation. Faced with similar circumstances, the Supreme Court was unable to "presume that the trial judge credited the prosecutor's assertion" about a juror's demeanor, *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008), and this court runs into the same problem here. As a result, the State's argument about Lett's demeanor does not sway the outcome of the court's de novo review.

### B. *Prosecutorial Mistake*

Second, the state says that the prosecutor's decision to strike Lett might have been based on a good-faith mistake. In support of that argument, the state points to

9

the "ample evidence in the record supporting an inference that the prosecutor was, at most, honestly mistaken about Lett's feelings on the death penalty." (Doc. 41 at 9.)

But instead of "ample evidence," the State offers only conjecture. The State bases its speculation on three circumstances: (1) the passage of several days "between the questioning of [Lett's] panel and the time that the parties struck the jury" (Doc. 41 at 9), (2) the prosecutor's reliance on his notes, and (3) the trial judge's "opportunity to look the prosecutor in the eyes" while the prosecutor explained his decision to strike Lett (Doc. 41 at 9).

But on a de novo review, those circumstances do not provide a sufficient basis for this court to infer a good-faith mistake by the prosecutor. The passage of a few days is not so long a time that the court will presume the prosecutor's memory failed him, especially since the prosecutor himself said nothing to suggest he had a hard time remembering why he struck Lett. And with respect to the prosecutor's notes and the trial judge's chance to look the prosecutor in the eyes, the court finds nothing in the record to support those arguments. Despite Hall's repeated requests, the prosecutor's notes do not appear in the record, so they cannot factor in to this court's de novo review. And if the trial judge knew of the prosecutor's mistake, it is quite unlikely that he would have ruled on Hall's objection without commenting on that fact.

Given the absence of any evidence in the record that suggests the prosecutor made an innocent mistake, the court will not make an affirmative finding to that

effect. To do otherwise would depart from the evidentiary record and enter the realm of pure speculation.

### C.   *Lett Compared to Jurors Chandler and Hutto*

Third, the State says that the court overlooked important differences between Lett and two other jurors when it concluded that those three jurors all expressed similar views. And in fairness, the State does mention some facts that superficially distinguish Lett from the two white jurors the prosecution did not strike. But none of those facts reveal a difference that meaningfully alters the court's conclusions. *See Miller-El II*, 545 U.S. at 247 n.6 ("A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters.").

At the outset, the court concedes that the State caught an error in the court's order. When Hutto said that "[l]ife without parole would be more appropriate than the death penalty," she was answering a question posed by Hall's attorney, not, as the court mistakenly wrote, the prosecutor. But that mistake doesn't change the analysis; the importance of that statement comes from what Hutto said, not who she said it to.

Nor do Hutto's other statements show a meaningful difference between her and Lett. Hutto's statement that she would "not vote for the death penalty without considering the circumstances" (Trial Tr. Vol. 34 at 5682) is substantially similar to Lett's affirmation that she could "listen to the evidence and base [her] decision on that issue on the evidence" as it came to her (Trial Tr. Vol. 33 at 5414–15).

11

Likewise, Hutto's statement that "life without parole would be more appropriate in certain circumstances" (Trial Tr. Vol. 34 at 5693) is not meaningfully different from Lett's summary of her feelings on the death penalty as "it depends, maybe it's the right thing" (Trial Tr. Vol 62 at 261–62). And to the extent the State claims that Lett and Hutto expressed different views on the concepts of age-based mitigation and accomplice liability, there's no evidence of such a difference because no one ever asked Lett about those concepts.

The State's brief does, however, appear to note one meaningful difference between Hutto and Lett. According to the State, Hutto said that she might vote for the death penalty in a case of "'murder and robbery or robbery and murder,' which are the facts of Hall's case." (Doc. 36 at 16 (quoting Trial Tr. Vol. 34 at 5682).) But the only support for that claim is a citation to an exchange that actually reveals the opposite:

> Q: . . . [I]f the state was able to prove to your satisfaction that Steve Hall killed someone and that he killed them during the course of a burglary and you were satisfied that that happened, you believed that happened, you believed it well enough that you voted him guilty and in that set of circumstances, would you vote for the death penalty, without considering other evidence?
>
> A: No.
>
> Q: What other evidence would you be looking for?
>
> A: The circumstances.
>
> Q: The circumstances of what? The circumstances of the crime?
>
> A: If it was murder and robbery or robbery and murder.
>
> Q: If the State proved that it was a murder and a burglary—

12

> A: Yes.
>
> Q: —and you were sure of that, you were sure of that to the extent that you voted to convict him and the other eleven jurors were also equally convinced, strong evidence, would, in that situation, would you vote for the death penalty for Mr. Hall?
>
> A: No.
>
> Q: You would not?
>
> A: No.

(Trial Tr. Vol. 34 at 5682–83 (questioning by defense counsel).) Thus, Hutto ultimately came right out and said that she would not vote to give Hall the death penalty even if she decided that he was guilty. Lett, on the other hand, never said anything of the sort. Instead, she committed to "listen to the evidence and base [her] decision on that issue on the evidence." (Trial Tr. Vol. 33 at 5414–15).

But the prosecutor struck Lett instead of Hutto. That decision cannot be explained by the difference between Hutto's and Lett's views on the death penalty. As discussed above, to the extent Hutto and Lett differed on that point, Hutto expressed more reluctance to vote for the death penalty on the facts of Hall's case than Lett did. As a result, the court finds that the prosecutor's decision to strike Lett rather than Hutto "makes the prosecutor's race neutral reason unconvincing and implausible and suffice[s] for the determination that there was a *Batson* error." (Doc. 35 at 43.)

Before moving on, the court notes that Hutto was not the only white juror with views similar to Lett who ended up serving on the jury. The prosecutor also declined to strike Anne Chandler, whose similarities to Lett are described in the court's earlier order. (*See* Doc. 35 at 42–43.) In a different case, those differences might tip the scales in the State's favor. But combined with the similarities between Hutto and Lett (which the court finds sufficient on their own to discredit the prosecutor's race-neutral reasons for striking Lett), the similarities between Chandler and Lett only heap further doubt on the prosecutor's explanation for his decision to strike Lett. Thus, in light of all the relevant circumstances, the court finds that the State's arguments differentiating Hutto, Chandler, and Lett, do not require the court to alter its previous judgment.

### D. *Other Circumstances*

Finally, the State makes a number of poorly developed arguments under the heading "other circumstances." But those arguments do nothing to alter the analysis above.

To begin with, the court attaches little significance to the fact that the prosecutor struck eleven jurors before he struck Lett. Likewise, the court is unmoved by the prosecutor's decision to strike one white juror who "seemed unsure." (Doc. 36 at 19). Whatever those facts may prove, they do not explain why the prosecutor struck Lett instead of Hutto or Chandler, so they do not alter the analysis above.

14

Likewise, the court gives little weight to the supposed weakness of Hall's prima facie showing of discrimination. What matters here is that the trial court found that Hall *did* make an adequate showing under *Batson*, which in turn obligated the prosecutor to articulate a race-neutral reason for his decision to strike Lett. And for the reasons discussed above, the explanation the prosecutor gave is implausible in light of the totality of the circumstances, a conclusion that is not undercut by the fact that the prosecutor could have struck more black jurors if he wanted to. *See U.S. v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986) ("[U]nder *Batson*, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown.").

Finally, the court rejects the notion that the prosecutor struck Lett as part of a "consistent pattern of striking jurors because of their views on the death penalty." (Doc. 36 at 18.) The pattern that emerges from the State's citations on that point shows only that the prosecutor consistently struck jurors who expressed *strong opposition* to capital punishment. For the reasons discussed above, Lett does not fit that pattern because she never expressed strong opposition to the death penalty; she only admitted to having some mixed feelings. And within the category of jurors that had mixed feelings on the death penalty, the prosecutor did not follow a consistent pattern. If he had, he would have struck Hutto instead of Lett.

## III. CONCLUSION

For the reasons set out above and in the court's previous order (Doc. 35), it is

**ORDERED** that the State's Rule 29 motion to alter or amend (Doc. 36) is

**DENIED**.

**DONE** and **ORDERED** this 26th day of September, 2014.

/s/ Callie V. S. Granade
**UNITED STATES DISTRICT JUDGE**